# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Xinghai Liu | **Complaint for a Civil Case** |
| | CV 18-3412 |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. _____ <br> *(to be filled in by the Clerk's Office)* <br><br> Jury Trial:   x Yes   ☐ No <br> *(check one)* |



BRODIE, J.

BLOOM, M.J.

-against-

Chinese Government of the People's Republic of China

See attached

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*



RECEIVED
JUN 0 8 2018
PRO SE OFFICE

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Xinghai Liu |
| Street Address | 221 Rabbit Lane |
| City and County | West Vancouver, Canada |
| State and Zip Code | BC, V7S 3B9 |
| Telephone Number | 617-800-4938 |
| E-mail Address | angelastzhao@gmail.com |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Chinese Government of the People's Republic of China |
| Street Address | 520 12th Avenue |
| City and County | New York, NY |
| State and Zip Code | New York, 10036 |
| Telephone Number | 212-244-9392 |
| E-mail Address | cnnyconsulate@mfa.gov.cn |

Defendant No. 2

| | |
|---|---|
| Name | Administrative Committee of Hong Gu Tan New Zone of NanChang of JiangXi province of China |
| Street Address | 669 LüYin Road, Hong Gu Tan New Zone |
| City and County | NanChang, China |
| State and Zip Code | JiangXi, 330029 |
| Telephone Number | 86-791-8389670,   86-791-8389606 |
| E-mail Address | |

Defendant No. 3

| | |
|---|---|
| Name | Greenland Holding Group Corp. Ltd |
| Street Address | 700 Da Pu Road |
| City and County | ShangHai, ShangHai |
| State and Zip Code | ShangHai, 200023 |
| Telephone Number | 86-21-53188666 |
| E-mail Address | |

Defendant No. 4

| | |
|---|---|
| Name | ShangHai Greenland Group JiangXi ShenJiang Real Estate Co. LTD |
| Street Address | 999 Qian Hu DaDao, Hong Jiao Zhou |
| City and County | NanChang, China |
| State and Zip Code | JiangXi 330003 |
| Telephone Number | 86-791-85895617 |
| E-mail Address | |

Defendant No. 5

| | |
|---|---|
| Name | Greenland Atlantic Yards LLC |
| Street Address | One Metro Tech Center, 18th Floor |
| City and County | Brooklyn, New York |
| State and Zip Code | New York, 11201 |
| Telephone Number | |
| E-mail Address | |

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State

as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

    x  Federal question              ☐  Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.**    **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Alien Tort Statute _____

_____

_____

**B.**    **If the Basis for Jurisdiction Is Diversity of Citizenship**

    1.    The Plaintiff(s)

        a.    If the plaintiff is an individual

The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

        b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

    2.    The Defendant(s)

        a.    If the defendant is an individual

The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. *Or* is a citizen of *(foreign nation)* _____.

b.  If the defendant is a corporation

The defendant, *(name)* _____, is
incorporated under the laws of the State of *(name)*
_____, and has its principal place of
business in the State of *(name)* _____. *Or* is
incorporated under the laws of *(foreign nation)*
_____, and has its principal place of
business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an
additional page providing the same information for each additional
defendant.)*

3.  The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant
owes or the amount at stake—is more than $75,000, not counting interest
and costs of court, because *(explain)*:

_____
_____
_____
_____

## III.  Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as
briefly as possible the facts showing that each plaintiff is entitled to the damages or other
relief sought.  State how each defendant was involved and what each defendant did that
caused the plaintiff harm or violated the plaintiff's rights, including the dates and places
of that involvement or conduct.  If more than one claim is asserted, number each claim
and write a short and plain statement of each claim in a separate paragraph.  Attach
additional pages if needed.

1)  Personal damages of $100 million and human rights damages of $2 billion against
five defendants. I was arbitrarily arrested and detained for two years and six months
by the Ministry of Public Security of China (MPS) and provincial department of
Public Security of JiangXi province in 2010 in BeiJing. And, I was sentenced
unlawfully to life imprisonment in four fake offences in 2012 in NanChang and since
then I am being forced into doing slave labour till now. For illegally permanently
occupying my property in NanChang, defendant No.3 and No.4 and No.5 conspired
and aided and abetted and are aiding and abetting defendant No.1 and No.2 to do so

(see Exhibit I).

2) Property damages of $2.5 billion. Where there is not any payment to me, and therefore, I have never transferred my property in HanChang to any other party, a project Greenland Central Plaza started to be constructed in September 30, 2008 on my property by defendant No.3 and No.4 (see Exhibit II). And the profits from occupying and developing and operating illegally my property have been constantly transferred to defendant No.5 since it was established.

3) Emotional distress damages of $100 million. I have been suffering dramatically emotional distress caused by all wrongdoings committed by five defendants for almost eight years.

Five defendants' wrongdoings had and have been heinously violating Chinese Criminal Law, Chinese Tort Law, UN's Convention for Protection of Human Rights, US Global Magnitsky Act and Sherman Antitrust Act and, therefore, give rise to my ATS claims against five defendants.

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Having recognized the heinousness of the unlawful judgment against me and that an investigation into such a criminal offence should have to be taken pursuant to the document [2001] No. 13 issued by herself, the Supreme People's Procuratorate of China (SPP) refused to take any action against local judicial bodies over my petition in December 2017 with a ridiculous excuse – overstepping petition. All existing remedies I have pursued and exhausted in China have been being unavailable. Five defendants' wrongdoings against me have never been stopped till now and have been heinously violating the norms of international law. The claims and reliefs I ask the court to order hereto are:

1) Personal damages of $100 million and human rights damages of $2 billion against five defendants.

2) Property damages of $2.5 billion [680,000,000 x 2017 CPI / 2006 CPI (direct

6

financial damages) + 680,000,000 x 5% x 11 years (interest rate – profit) + 200,000 $m^2$ x ¥15,000/$m^2$ (net developing profit)] x 3 (triple damages of punitive compensation pursuant to Sherman Antitrust Act) = ¥15 billion = $2.5 billion.

3) Emotional distress damages of $100 million. I have dramatically suffered emotional distress for almost eight years caused by five defendants' wrongdoings.

4) A writ for seizure of assets (Pacific Park Brooklyn) against five defendants for compensatory payment to me.

5) An injunction against five defendants from damaging human rights against me.

6) A write for urging Chinese gov. to comply with the norms of international law have the SPP investigating the crime of unlawful judgment against me pursuant to [2001] NO.13 which has been edified into the judicial interpretations of the Supreme People's Court of China (SPC) and release me immediately without guilt.

7) An injunction against five defendants from preventing me to pursue judicial remedies over unlawful judgment against me and to prosecute and this civil action.

8) A protective order for Exhibit III pursuant to Rule 26 (c) (1).

9) A court order for permitting service by a United States marshal or deputy marshal or by someone specially appointed by the court pursuant to Rule 4 (c) (3), given my status as a pro se and an innocent prisoner.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: April 22, 2018.

Signature of Plaintiff

Printed Name of Plaintiff    Xinghai Liu

Pro Se Office of US District Court

For Eastern District of New York (Brooklyn)

255 Cadman Plaza East

Brooklyn, NY 11201

Plaintiff

Liu Xinghai

                        Represented by Liu Xinghai Pro Se

                        c/o Anna Zhao

                        221 Rabbit Lane

                        West Vancouver, BC V7S 3B9

                        Canada

v.

Defendant No. 1

                        Chinese Government of the People's Republic of China

                        520 12th Avenue

                        New York, NY

                        New York 10036

                        212-244-9392

Defendant No. 2

                        Administrative Committee of Hong Gu Tan New Zone of NanChang of JiangXi province of China

                        669 LüYin Road, Hong Gu Tan New Zone

                        NanChang, China

                        JiangXi, 330029

                        86-791-8389670,  86-791-8389606

Defendant No. 3

                        Greenland Holding Group Corp. Ltd

700 Da Pu Road
ShangHai, ShangHai
ShangHai, 200023
86-21-53188666

Defendant No. 4

ShangHai Greenland Group JiangXi ShenJiang Real Estate Co.
LTD
999 Qian Hu DaDao, Hong Jiao Zhou
NanChang, China
JiangXi 330003
86-791-85895617

Defendant No. 5

Greenland Atlantic Yards LLC
One Metro Tech Center, 18th Floor
Brooklyn, New York
New York, 11201

2

The Complaint
Civil Cover Sheet

Dear Sir/Madam,

I am Liu Xinghai, a Tongan citizen. I have served unlawful imprisonment and slave labor for respectively almost eight and six years in NanChang prison of JiangXi province of China imposed conspiratorially by defendant Chinese government of the People's Republic of China (Chinese gov.) and defendant Administrative Committee of Hong Gu Tan New Zone of NanChang of JiangXi province of China (Hong GT) and defendant ShangHai Greenland Group JiangXi ShenJiang Real Estate Co. LTD (ShenJiang) (Chinese 上海绿地集团江西申江置业有限公司) and defendant Greenland Holding Group Corp. Ltd (Chinese 绿地控股集团股份有限公司) (Greenland Holding) and defendant Greenland Atlantic Yards LLC (Atlantic Yards) (its principal place of business and its assets which I request the court to seize for compensatory payment to me are in Brooklyn of New York) for illegally permanently occupying my property.

The five defendants' wrongdoings have been heinously violating the norms of international law and, therefore, give rise to the cause of action to my ATS claims with federal question jurisdiction over 440 civil rights in the US District Court For Eastern District of New York (Brooklyn).

Based on due process of having a full and fair opportunity to litigate on the merits in a case commended by constitutional principles, with new defendants (e.g. Chinese gov.), new important evidence (Exhibit III), new transaction (slavery), and indispensible party (e.g. ShenJiang), I respectfully submitted this complaint against above-mentioned five defendants for claims as the follows:

1. Personal damages of $100 million and human rights damages of $2 billion against five defendants. I was arbitrarily arrested and arbitrarily detained for two years and six months in June 13, 2010 in BeiJing by a joint operation of law enforcement by a police officer group from MSP and the provincial

3

Department of Public Security of JiangXi province – such a scope of joint operation of law enforcement is usually deployed for capture of armed drug traffickers – in the name of a fake minor offence of false report of registered capital – such a minor offence, if anything, is usually summonsed and ended up to be fined money. And I was sentenced unlawfully to life imprisonment in four fake offences in 2012 in NanChang and since then I have been being forced into doing slave labor with three hundred and fifty-nine working days a year and twelve to fifteen working hours a day and a payment of two to six dollars a month – no Saturday, no Sunday, never – under threat of torture till now. For illegally permanently occupying my property (World Trade Centre) in Hong Gu Tan New Zone of NanChang, defendant No.3 and No.4 and No.5 conspired with and aided and abetted and are aiding and abetting defendant No.1 and No.2 to do so (see Exhibit I).

2.     Property damages of $2.5 billion. Where there is not any payment to me and therefore I have never transferred my property to any other party, a ceremony of breaking the ground for construction of Greenland Central Plaza was held on September 30, 2008 by defendant No. 3 and No.4 and HongGT on my property World Trade Centre attended by SuRong as then the Secretary of Party's Committee of JiangXi province in a way of abuse of power in asking local government officials to illegally transfer my property to ShenJiang by executive power rather than by legal procedure at the scene of the ceremony (see Exhibit II). And, SuRong was sentenced to life imprisonment in 2017 for abuse of power and taking huge bribery and posessing huge assets with unknown source. And the profits from occupying and developing and operating illegally my property have been being constantly transferred to defendant No.5 since it was established.

3.     Emotion distress damages of $100 million. I have been suffering dramatically emotional distress for almost eight years caused by five defendants' wrongdoings.

4.     A writ for seizure of assets (Pacific Park Brooklyn) against five defendants for compensatory payment to me.

5.      An injunction against five defendants from damaging human rights against me.

6.      A writ for urging Chinese gov. to comply with the norms of international law and to have the Supreme People's Procuratorate of China (SPP) investigate the crime of unlawful judgment against me pursuant to [2001] No.13 which has been codified into the judicial interpretations of SPC and release me immediately without guilt.

7.      An injunction against five defendants from preventing me to pursue judicial remedies over unlawful judgment and this civil action. Soon after defendants were served in case No. 17-CV-1747-LDH-RER, I was warned by an American citizen that the true boss of SuRong and Greenland Holding is a member of the politburo of China, and who was then in charge of the MPS when I was arbitrarily arrested and detained in 2010 in Beijing (see Exhibit III) and in charge of SPP, SPC, and the Ministry of Justice (MJ) and MPS when I have been pursuing and exhausting judicial remedies and serving slavery in prison.  That is why all judicial remedies I had and have been seeking in China are always unavailable till now, while the unlawful judgment against me is so extremely flagrant, especially the all-out rule of law is being highly cried out everyday, everywhere by every official, and that is showing how necessary the existence of the "spooky entanglement" in the real world between US court's jurisdiction by necessity and dictatorship is.

8.      A protective order for Exhibit III. Given the overwhelming unfair political and economic advantage and strength the five defendants control, taking the underlying risk of annoyance, embarrassment, or oppression into consideration against the witness, an American citizen, who provided Exhibit III, I request a protective order for Exhibit III pursuant to Rule 26(c)(1).

9.      A court order for permitting service by a United States marshal or deputy marshal or by someone specially appointed by the court pursuant to Rule 4(c)(3), given my status as a pro se and an innocent prisoner.

I declare that the foregoing is true and correct to my knowledge and experience under penalty of perjury.

Respectfully Submitted,

Liu XingHai

April 28, 2018

300221

13500B

2

3

## FAKAMATALA

| | Tokotaha 'oku 'a'aná Bearer | DESCRIPTION Uaifi Wife |
|---|---|---|
| Ngāue Profession | MERCHANT | |
| Feitu'u & 'Aho fā'ele'i Place & date of birth | CHINA 21sT MAR 1964 | |
| Nofo 'i Domicile | NUKU'ALoFA TONGA | |
| Ma'olunga Height | 1 m. 60 cm. | _____ m. _____ cm. |
| Lanu 'o e Kano'imatá Colour of eyes | BROWN | |
| Lanu 'o e fulu- fulu'i-'ulú Colour of hair | BLACK | |
| Ko ha Faka 'ilonga kehe Any peculiarities | NIL | |

### FĀNAU CHILDREN

| Hingoa Name | 'Aho fā'ele'i Date of birth | Tangata pe fefine Sex |
|---|---|---|
| | NIL | |
| | NIL | |

Tā 'o e tokotaha 'oku 'a'aná
Photograph of Bearer

Uaifi
Wife



Fakamo'oni hingoa
'o e tokotaha 'oku 'a'aná
Signature
of Bearer

Fakamo'oni hingoa
'o e Uaifi
Signature
of Wife



1

## PULE'ANGA 'O TONGA
## KINGDOM OF TONGA
### PAASIPOOTI
### PASSPORT

Fika 'o e Paasipooti
No. of Passport    **135005**

Hingoa 'o e tokotaha
'oku 'a'ana
Name of Bearer   *MR. X. H. LIU*

A.K.A.
*JASON LIU*

'Oku na ō mo hono uaifi
Accompanied by his wife   *NIL*

pea mo e fānau 'e

and by   *NIL*   children

Ko e Taha Tonga 'i hono fā 'ele'i
'i he liliu-kakai.
A Tongan Subject by birth
by naturalisation

For fingerprint Identification, see page 6.

Ko e Paasipooti ni 'oku 'i ai 'a e peesi 'e 48. This Passport
contains 48 pages.

**Government of Tonga**

These are to request and require in the name of
His Majesty the King of Tonga
all those whom it may concern to allow:

*XING HAI LIU*

a Tongan subject, to pass freely without let or hindrance
and to afford all necessary aid and assistance.
Given at Nuku'alofa this 18th

day of DECEMBER

hundred and

........... Minister of Police

Fika
No. *135005*

12-06-07 12:49 PM

0 1232x1648 pixels

Page 1 of 1

https://mail-attachment.googleusercontent.com/attachment/u/0/?ui=...S9LysFbD2XUJ&sadet=1339087764864&sads=u9xBK3b-IgGfseJa7gX3-NoLrU4

5

## NGAAHI FOKOTU'U
## RENEWALS

THE VALIDITY OF THIS PASSPORT IS HEREBY

EXTENDED TO   **18 DEC 2012**

**14 AUG 2007**

## NGAAHI FAKAMATALA
## OBSERVATIONS

BEARER PREVIOUSLY HELD TONGAN PASSPORT No. 142726

NOW CANCELLED EXCEPT FOR PAGES 38 AND 39.



---

4

Ngaahi fonua 'e 'aonga fakalao ai 'a e Paasipooti ni
Countries for which this Passport is valid

BRITISH COMMONWEALTH COUNTRIES

AND ALL FOREIGN COUNTRIES.



'Oku 'osi 'ene 'aonga 'a e Paasipooti 'i he:
The validity of this Passport expires on:

**18 DEC 2007**

tukukehe 'o ka fakafo'ou
unless renewed

Fai'i
Issued at CONSULATE GENERAL OF TONGA SAN FRANCISCO

'Aho
Date   **18 DEC 2002**



VLCHNX<H<<LIU<<<<<<<<<<<<<<<<<<<<ZZ
04112725<2TON6403212M1006294<<<<XSO4



中华人民共和国签证
CHINESE VISA                                    D9685482

签证种类 L                        次 数    M(多)
CATEGORY                          ENTRIES

加于此前入境 12NOV2010    入 境 后 每 次 停 留 060    天
ENTER BEFORE                DURATION OF EACH STAY        DAYS AFTER ENTRY

签发日期 12MAY2010          签发地点    香港
ISSUE DATE                  ISSUED AT

姓 名 X. LIU
FULL NAME

出生日期 21MAR1964          护照号码    135005
BIRTH DATE                  PASSPORT NO.

备 注
REMARKS

VLCHNLIU<<X<H<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<
135005<<<6T0N6403212M1011120JK10HKGAD5RLD642

*Exhibit 1*

**The Criminal Defense**

Appellant: Liu Xinghai

Gender: Male

DOB: March 21, 1964

Education: University Degree

Occupation: Chairman of Nanchang World Trade Center, Ltd.

**Reason for Appeal:**

The appellant is innocent. The first and second trial court's judgments determining the defendant Liu Xinghai to be guilty of "the crime of illegally transferring land usage rights", "the crime of contract fraud", "the crime of falsifying registered capital", "the crime of concealing accounting receipts, accounting registers, and financial accounting reports" has misjudged the facts, misapplied the law, and the trial procedures are unlawful. Therefore, the defendant refuses to accept the Nanchang Intermediate People's Court's Verdict No. 22 and the Jiangxi Higher People's Court's Verdict No. 00033, and is appealing the above two verdicts.

**Requests:**

1. We request that the court reexamine the case in accordance with the trial supervision procedure.
2. We request that the court lawfully acquit the appellant Liu Xinghai of all crimes.

**Facts and Reasons:**

*1. The Basic Facts of This Case:*

In the summer of 2002, the appellant Liu Xinghai, Chairman of the Zhejiang World Trade Joint Investment Group, accepted the warm invitation of the Nanchang Municipal Government to participate along with representatives of the Zhejiang provincial party representatives in its Zhejiang Enterprises Investment Talks. Mr. Liu reached an agreement with the government of Nanchang's Honggutan New District to invest 2 billion yuan (RMB)for the construction of the first World Trade Center building in Nanchang. The "Investment Agreement" was signed on August 4 of that year. The Honggutan New District's Nanchang World Trade Center project was to be constructed by the appellant Liu Xinghai, and was to include such as an exhibition center, two A-class high rise office buildings, a five-star hotel, and hotel-style apartments. After signing the agreement, Liu Xinghai and the relevant department of the Nanchang Municipal Government signed a "Land Transfer Contract." In order to ensure the completion of the project by May of 2005, construction began even though the transfer

1

of the land in the region from local farmers had not been completed and no "construction permit" was issued.

According to the "Investment Agreement", the Honggutan New District Government should have, in accordance with the law, unconditionally transferred a piece of residential land to the investors of the Nanchang World Trade Center project as compensation for the public construction project. By January, 2003, the Honggutan New District Government had violated the agreement and listed the residential land which belonged to the project for sale. Nonetheless, the Nanchang World Trade Company was still delisted, and on January 16, 2003 signed a "Residential Land Transfer Contract" and later established the Nanchang World Trade Apartments company. A large sum of the appellant Liu Xinghai's investment had become trapped in the exhibition center, which offered no financial returns, and he hoped to make a profit with the residential project. Yet at this time, the Honggutan New District Government unexpectedly declared that the residential land would be converted into a financial district which could only be used for the construction of public projects. **In order for the project to proceed, the Nanchang World Trade Company had no choice but to transfer the shares still held by the Nanchang World Trade Apartment Company project to the Xiamen Lianfa Group (the first and second trial courts used this as a basis to determine the appellant guilty of the crime of illegally transferring land usage rights).**

In May, 2004, the leadership of the Honggutan New District Government requested the Nanchang World Trade Company to enhance its image and increase the registered capital. **The appellant thus authorized the property manager to use the 30 million yuan financing of the Huaqi Investment Enterprise Company, Ltd. to increase the capital of the Nanchang World Trade Center Company. After the relevant documents were processed by the industrial and commercial license verification intermediaries designated by the Honggutan New District Government, the Huaqi Investment Enterprise Company's 30 million yuan was injected into the Nanchang World Trade Company, and the change of industrial and commercial license  was registered (the first and second trial courts used this as a basis to determine the appellant guilty of the crime of falsifying registered capital).**

In April, 2004, the Ministry of Land and Resources issued the "Notice on the Enforcement and Supervision of Further Expansion of Listing and Auctioning Usage Rights to Commercial Land." Thus, as requested by the Honggutan New District Government, the Nanchang World Trade Company signed on November 12, 2004 a "Cancellation of Investment Agreement" and the Honggutan New District Government requested to have the project land listed once again for sale. However, due to lack of prospective buyers, the project in the end was again assigned to the Nanchang World Trade Company and the two sides signed a new land transfer agreement on February 18, 2005. After 2005, due to continual rise in land and housing prices, and the rapid change in leadership of the Nanchang Municipal Government and the Honggutan New District Government, the district government once again requested the Nanchang World Trade Company to adjust the design plans. Part of it included the cancellation of the

2

commercial part of the exhibition center. This decision caused dissatisfaction among customers who had already signed and had paid in advance for commercial use of the center and these customers petitioned higher authorities. The whole project had to be stopped again due to these disruptions. Unable to support the project, the Nanchang World Trade Company began reaching out to the large enterprise Shougang Group's subsidiary Long Ying Company to cooperate and expected the local government to end the unfair treatment. **After several visits, the Long Ying Company decided to invest 20 million yuan and received 29% of the Nanchang World Trade Company's shares. Long Ying Company and Nanchang World Trade Company made the shares exchanges and updated the License by the industrial and commercial verification intermediary designed by the Honggutan New District government (the first and second trial courts used this as a basis to determine the appellant guilty of the crime of committing contract fraud).**

In February, 2008, the Director of the Honggutan New District Management Committee told the appellant Liu Xinghai that XX company had expressed interest in the Nanchang World Trade Center project and requested that the project be returned to the district so that the district government can sell it to another company. Under intense pressure, Liu Xinghai had no choice but to agree to the Honggutan New District Management Committee's request and sold the project back to the district government at the low price of 180 million yuan in March, 2008. However, after signing the agreement with the Nanchang World Trade Company, the Honggutan New District government did not fulfill it, and did not pay the construction and contract fees that was stipulated by the contract. The local public security bureau froze the bank account of the Nanchang World Trade Company on the same day. The project was later sold to Shanghai Greenland Group at a price of 680 million and the public construction land was once again reverted back to residential land status for construction of residential apartments.

**On June 13, 2010, the appellant was suddenly detained by the Jiangxi Public Security Bureau for the crime of "escaping with [illegally] withdrawn investment funds." Because the appellant had resided for long periods of time overseas before detention, he was unable to contact the custodian on the accounting documents and could not provide the location of the accounting documents in a timely and accurate matter. Later, according the clues provided by the appellant, public security officials were able to locate the accounting documents (the first and second trial courts used this as a basis to determine the appellant guilty of the crime of concealing accounting receipts, accounting books, and financial accounting reports).**

On December 8, 2011, the Nanchang Intermediate People's Court found Liu Xinghai guilty of "committing contract fraud" with the sentence of life imprisonment, lifetime deprivation of political rights, and the confiscation of all personal property; of "illegally transferring land usage rights" with the sentence of seven years imprisonment and a fine of 20 million yuan; of "concealing accounting receipts, accounting books, and financial accounting reports" with the sentence of four years imprisonment and a fine of

3

1 million yuan; of "misrepresenting registered capital" with a sentence of three years imprisonment. For the above four crimes, the court chose to apply the sentence of life imprisonment, lifetime deprivation of political rights, and the confiscation of all personal property. In addition, the defendant company Nanchang World Trade Center was found guilty of falsifying registered capital and fined 30 million yuan.

On September 12, 2012, the Jiangxi Higher People's Court upheld the verdict of the trial of first instance. The appellant's appeal request was denied.

> 2. *Liu Xinghai's actions does not constitute "Illegally Transferring Land Usage Rights," the first and second trial courts relied on insufficient evidence and committed legal error in determining that he "illegally transferred land usage rights."*

According to the penal code of our country, the crime of illegally transferring land usage rights is committed with the intention of profiting from such transfer in violation in serious violation of land management regulations concerning the reselling of land usage rights. In practice, the crime of "illegally transferring land usage rights" is specifically aimed at preventing the illegal transferring agricultural land for construction purposes. Thus, the preconditions for this crime is "illegal" and "transfer." To constitute the "illegal" aspect means the action must be in violation of land management regulations. The transfer or reselling must be unlawful. To constitute the "transfer" aspect means the user of the land has transferred the usage rights, including selling, exchanging, or gifting. In addition, the subject of this crime can only be a special subject, namely the manager of the land use rights and the owner of the land use rights, typically a company, and can impose a fine on the company. At the same time, punishment can also be imposed on the manager directly in charge and other personnel in charge. This crime is a violation of the national land management institution.

The first and second trial courts determined that "on March 12, 2004, Liu Xinghai signed a contract with the Xiamen Lianhe Fazhan (Group) Company, Limited, transferring a portion of the Nanchang World Trade Apartment Development Company, Limited's shares to the Xiamen Lianhe Fazhan (Group) Company, Limited. Ultimately, the defendant Li Xinghai, using the transfer of shares method, transferred the usage rights of the Honggutan Center B5 and B6 land parcels to the Xiamen Lianhe Fazhen (Group) Company, Limited for a price of 168 million yuan, making a profit of 147 million yuan." Using this as a basis, the court determined that the defendant Liu Xinghai was guilty of "illegally transferring land usage rights."

The appellant Liu Xinghai does not meet the basic characteristics of the crime of "illegally transferring land usage rights."

First, the share transfer agreement signed between the appellant Liu Xinghai and the Xiamen Lianhe Fazhan (Group) Company, Limited does not violate any land management regulations or any relevant laws. There is nothing "illegal", and the "illegal" aspect is a core precondition of this crime.

4

Second, the share transfer agreement signed between the appellant Liu Xinghai and the Xiamen Lianhe Fazhan (Group) Company, Limited does not include any "speculation." The transfer of shares in this case does not involve usage rights to the B5/B6 land parcels. The property rights was still registered under Nanchang Apartment Company's name, there was no change from before the shares were transferred, the company was still Nanchang World Trade Apartment Company, the land permit is still the original permit, all the objects on the land are still the original objects, and the usage plans for the land is still the same. Thus, this case does not involve any "illegal transfer or speculation" and Li Xinghai did not commit the crime of "illegally transferring land usage rights."

Third, the principle offender in this case can only be the land transferor or the speculator, including the holder of the usage rights before the land was transferred or the manager. That is to say, if the actions in this case constitutes as a crime, then the offender should be "Nanchang World Trade Apartment Development Company, Limited." Only after investigating the company with original rights to the land can there be an investigation into the relevant personnel. The first and second trial courts did not determine the company with the land usage rights to have committed any crimes, so on what basis could the court determine that Liu Xinghai committed a crime?

Finally, the share transfer agreement signed between the appellant Liu Xinghai and the Xiamen Lianhe Fazhan (Group) Company, Limited does not pose any danger to society. The result of the transfer can only lead to the restarting of the project and would not cause any danger to society. Because the share transfer agreement signed by the appellant Liu Xinghai does not pose any danger to society, it should not constitute as a crime.

In conclusion, the first and second trial courts confused the basic characteristics and differences between legal shares and illegal transactions. The "Share Transfer Agreement" signed between the appellant Liu Xinghai and the Xiamen Lianhe Fazhan (Group) Company, Limited in March, 2004 transferred 80% of Nanchang World Trade Apartment Company's shares held by the appellant Liu Xinghai to the Xiamen Lianfa Company, and the Xiamen Lianfa Company became a legal shareholder of the Nanchang World Trade Apartment Company. This share transfer is protected under commercial law and is a normal transfer of shares between companies. In the real estate development market, transfer of shares is commonly used to raising investment capital and obtaining profits from land development. It is no exaggeration to say that such an action is prevalent in the real estate market, in full of the media and the public eye, and countless real estate moguls all use share transfers as the primary form of transfer. Thus, Liu Xinghai's actions does not violate any land management regulations and should not constitute as a crime.

3. The actions of Liu Xinghai and the Nanchang World Trade Company does not constitute the crime of "Contract Fraud."

5

The crime of contract fraud refers to illegal aim of defrauding the other party and obtaining large sums of money and property during the signing and execution of a contract. Using a contract to defraud another party typically includes the following characteristics: (1) using a fake company or impersonating another person to sign a contract; (2) using forged, altered, or invalid bills or other forged financial documents as collateral, and by using these forged documents as proof of capability in executing a contract, thus deceiving the other party into signing the contract; (3) having no capability of executing a contract, and so by executing only a small portion of the contract in order to deceive the other party into continuing to sign and execute the contract; (4) fleeing after receiving goods, payments, deposits, and collateral property from the other party; (5) using other methods to obtain property and money from the other party, including: unreasonably stopping the implementation of the contract after receiving goods, payments, deposits, and collateral properties and not refunding, or using them for other purposes and are unable to refund; using the obtained properties and money to pay off debt instead of implementing the contract; using them for illegal activities; squandered them and are unable to refund, amongst others.

The Nanchang Intermediate People's Court determined that on July 6, 2006, the Long Ying Company made an investment of 20 million yuan and became a shareholder of the Nanchang World Trade Center Company, Limited. The two sides signed an agreement on increasing investment and expanding shares. After receiving the 20 million yuan from the Long Ying Company, the Nanchang World Trade Center Company, Limited paid construction fees amounting to 6 million yuan; paid 4 million yuan to the Nanchang World Trade Mall company; paid 10 million yuan to the Beijing World Trade Film Company. In August of that same year, the Nanchang World Trade Center Company, Limited conducted its capital verification, and obtained the registration of capital increase from the relevant departments for industry and commerce. The court used this as a basis for the crime of contract fraud. The Jiangxi Higher People's Court determined that the appellant hid the actual situation of his company from the Long Ying Company and appropriated the 10 million yuan for his own personal use, matching the characteristics of contract fraud.

The appellant believes that his action does not constitute contract fraud.

First, Liu Xinghai did not possess the intention of committing contract fraud. Liu Xinghai's purpose in obtaining the investment money was to facilitate the construction project and the funds were used for that purpose. After receiving the 20 million yuan, Liu Xinghai immediately paid 6 million to the Hang Jian Group as per his agreement with the Hang Jian Group Chairman Wang Minghe. At the same time, he also used the land permit as collateral and requested that the Hang Jian Group resume construction. Thus, Liu Xinghai's receiving of the investment funds does not possess any intention to commit fraud.

Second, Liu Xinghai's actions did not exhibit any of the characteristics for the crime of contract fraud. There is no evidence that Liu Xinghai fabricated the facts; there is no evidence that Liu Xinghai hid the facts; there is no evidence that Liu Xinghai used

6

a fake company or impersonated another person to sign a contract; there is no evidence that Liu Xinghai used forged, altered, or invalid bills or other forged financial documents as collateral; Liu Xinghai had the capacity to execute the contract, and Liu Xinghai did not abscond after receiving goods, payments, deposits or collateral property from the other party. Before the Long Ying company received shares from the Nanchang World Trade [Company], they had visited the then Honggutan Management Committee and was well aware that the difficulties facing the Nanchang World Trade Company was the same that the appellant Liu Xinghai had described. Long Ying Company's 20 million yuan investment had the approval the Long Ying Company's Board of Directors, and is prudent, legal, and effective. The decision to invest 20 million yuan was made after several field visits by personnel from the Long Ying Company. Afterwards, the Nanchang World Trade Company's project was sold by the government for 680 million yuan. Thus, the Long Ying Company obtaining 29% of the Nanchang World Trade Company for 20 million yuan. was a very profitable business deal.

Third, the "victim" Long Ying Company did not actually suffer any real losses. In this case, the purpose of Long Ying Company's 20 million yuan investment was to obtain 29% of the Nanchang World Trade Company's shares, becoming one of its shareholders. Liu Xinghai had already transferred the 29% shares to the Long Ying Company, the Long Ying Company had already become one of the Nanchang World Trade Company's shareholders, the Long Ying Company had achieved its purpose, suffering no losses and was not defrauded. On what basis then did Long Xinghai commit contract fraud? In the Nanchang World Trade civil case, the Long Ying Company was designated by the Nanchang Intermediate People's Court as a civil executor on the basis of withdrawing its increased capital. The Long Ying Company argued and objected to being an executor, during the retrial process it denied withdrawing its increase capital, confirming the procedures for increased capital during the Nanchang World Trade Company's industrial and commercial verification and confirmed that it was a shareholder.  This is sufficient to determine that the Long Ying Company was not defrauded.

Finally, in view of the subject committing crime, the appellant Liu Xinghai does not match the characteristics of the subject. The appellant Liu Xinghai and the Long Ying Company does not possess any financial investment relationship. The Long Ying Company's decision to invest 20 million yuan in the Nanchang World Trade Center project was because it saw the potential profit of the project, not because of the personal credibility of the appellant Liu Xinghai. Liu Xinghai is in charge of the Nanchang World Trade Company, and it should be the Nanchang World Trade Company that should first shoulder the responsibility.

In conclusion, the agreement between Liu Xinghai and the Long Ying Company to increase capital and expand shares was legal under civilian law and is protected under the law. Liu Xinghai did not sign the contract with the goal of "illegally obtaining," he did not use any fraudulent means in the execution of the contract, and he executed the contract faithfully, transferring the shares of the Nanchang World Trade Company to the Long Ying Company. Liu Xinghai's actions shouldn't be considered contract fraud.

In reviewing Liu Xinghai's contract fraud case, the Jiangxi Higher People's Court first determined that the appellant Liu Xinghai had no personal economic capacity, then compared his personal assets with the financial capital needed for the project, arbitrarily determining that the appellant had no economic capacity, had no capacity to carry out the contract, and then determined that he was guilty of contract fraud. These judicial personnel not only lack basic understanding of financial and investment cycles and the utilization of rolling capital, at the same time, their decision also does not match reality. The appellant in this case has business entities in operation with forecasted profits in Beijing, Zhejiang, Jiangxi, and overseas. Just the project involved in this case alone, the Nanchang Municipal Government to date still owe [the appellant] 180 million yuan (the project was sold for 680 million). At that time, [the appellant] was still able to obtain a 280 million yuan investment from the Nanchang Agricultural Bank in the form of credit extensions. Thus, there is no reason to say that the appellant Liu Xinghai does not possess the capacity to carry out the contract.

> *4. The first and second trial courts mistaken determined Liu Xinghai committed the crime of "falsifying registered capital" and committed a sentencing error; Liu Xinghai's action does not constitute the crime of "falsifying registered capital."*

The crime of falsifying registered capital refers to the company or individual using forged documentation or certificates, or employing other fraudulent means to falsify registered capital when applying for company registration in order to deceive the relevant government bureaus into granting registration. The amount of capital falsified is large, leading to serious consequences.

In this case, Liu Xinghai did not commit the crime of falsifying registered capital.

First, the appellant did not falsify registered capital and instead transferred the 30 million yuan project funds to the accountant firm for verification. In May 2004, the appellant approved the financial manager to have the Huaqi Investment Company Limited's 30 million yuan investment used for the capital verification of the Nanchang World Trade Center Company, and carried the document procedures. The procedure was legal, the funds were real, the forms were complete, the Registration Bureau was not deceived, and there were no serious consequences. Thus, there does not exist the crime of falsifying registered capital.

Second, the documents used by the Nanchang World Trade Center Company during the registration process were genuine and legal, and the relevant departments were not deceived. The Nanchang World Trade Center Company involved in this case produced to the registration department the "Verification Report" obtained from the Accountant Firm, the "Bank Inquiry Form" and the "Bank Deposit Form" that the Accountant Firm obtained from the bank for 30 million yuan investment obtained from the Huaqi Investment Company. For use of this investment, the Nanchang World Trade Center Company according to the agreement has sole power of allocation, and this investment can be used as capital verification based on the circumstances. It should be

noted that, the person who applied to the registration department for registration and the appellant himself did not use any forged documents during the entire registration process, and there exists no evidence that the registration department was deceived.

Third, from an objective standpoint, the investment to the Nanchang World Trade Center Company did not lead to any serious consequences, this investment did not cause any damage to the interests of the creditors, and did not lead to the so-called other serious circumstances from occurring.

Finally, the first and second trial courts flagrantly violated legal stipulations, imposing punitive fines without any evidence or basis, and committed a sentencing error!

The 30 million yuan punitive fine imposed by the first and second trial courts is in direct violation to Article 158 of the Criminal Code. According to this article, the fine for the crime of falsifying registered capital should be between 1% to 5% of the total falsified capital. The first and second trial court determined that the total falsified capital to be 30 million yuan, and if we take the highest fine of 5%, then 30,000,000 x 0.05 = 1,500,000. How then can the first and second trial court fine 100% of the total falsified capital? The first and second trial court's flagrant violation of the Criminal Code and Section 9, Articles 35 and 36 of the Supreme People's Courts "Sentencing Guide" can only be described as a perversion of the law!

In conclusion, the appellant Liu Xinghai did not commit the crime of falsifying registered capital. The first and second trial court's decision that the Nanchang World Trade Center Company and Liu Xinghai committed this crime is without any actual or legal basis.

### 5. Liu Xinghai did not commit the crime of "concealing accounting receipts, accounting registers, and financial accounting reports."

This crime refers to purposely concealing or destroying accounting receipts or registers, which, according to law, should be preserved, and financial reports, leading to serious consequences. The first and second trial court's determination that the appellant Liu Xinghai's failure to produce accounting receipt, accounting registers, and financial accounting reports of the Nanchang World Trade Company had serious consequences and constituted a criminal action. This is actually a wrong accusation!

First, the receipts involved in this case were genuine, complete, and were carefully stored. Under proper circumstances, partnering companies, lawyers, and accountants can read and inspect them, and there was no reason to hide them from judicial agencies. The accounting receipts, accounting registers, and financial accounting reports of the Nanchang World Trade Company are all genuine, the appellant ordered that no employees shall commit forgeries or false accounting – this is one of the rules of the company and this shows that the appellant is an upright person and that company is a trustworthy enterprise. All documents were guaranteed to be genuine so that judicial agencies can inspect them at any time.

Second, before the appellant was brought in, he had been living overseas. Under the circumstance of being detained, it was normal for him [not to know about the documents of] the enterprises he had operated many years ago. At the end of the Nanchang project, the appellant ordered relevant personnel to collect, organize, and storage to documents so as to safeguard his legal interests. This is also a legal obligation as stated under enterprise law. Due to the fact that there were many documents being transferred around, that there were company personnel changes, and that a long time had passed, when the appellant was suddenly detained by the Jiangxi Public Security Bureau on June 13, 2010 for the crime of escaping with illegally withdrawn investment funds, and adding to the fact that he had been living overseas, it is credible that he could not provide the location of these documents in a timely manner.

Third, when the appellant Liu Xinghai was formally told by public security bureau that the relevant receipts were necessary for the investigation of the case, he provided clues to the location of the documents, and after investigation by public security personnel, determined that there was no attempt at concealment.

Finally, the concealment and intentional destruction of legally protected accounting receipts, registers, and financial reports are only supplementary offenses used when the concealed receipts and registers cannot be found and there is no way to determine the actual offense, similar crime of unknown source of money and property in bribery cases. If the receipts and registers are discovered, and the crime is determined, then concealment is only aggravating a situation, and should not be used as an independent punishment. In this case, the "accounting receipts and registers and financial documents" that were supposedly concealed had already been discovered and were used in determining that the appellant Liu Xinghai was guilty of the crime of "contract fraud", "unlawfully transferring land usage rights", and "falsifying registered capital". Accusing the appellant Liu Xinghai of committing the crime of "concealing accounting receipts, accounting registers, and financial documents" is a superfluous action.

In conclusion, appellant Liu, Xinhai didn't the commit the crime of concealing and intentionally destroying legally protected accounting receipts, accounting registers, and financial documents.

**Evidence and Summary of Key Points:**

A. *Regarding the Crime of Contract Fraud*

1. The purpose of Long Ying Company's 20 million yuan investment was to obtain 29% of the Nanchang World Trade Company's shares and become one of its shareholders. The Long Ying Company had already achieved its aim, so why did Liu Xinghai defraud them?
   a. <u>The buyer and seller both obtained what they wanted, there was no fraud involved.</u> The 20 million yuan was for consideration of 29%

10

shares, that is to say: 20 million yuan is equivalent to 29% of the total shares. Liu Xinghai had already transferred 29% of Nanchang World Trade Company's shares to the Long Ying Company, and the Long Ying Company became one of the Nanchang World Trade Company's shareholders. Liu Xinghai did not receive the 20 million yuan for nothing.

b. The two parties engaged in the same action, yet the prosecution determined only one party guilty of a crime, that is implausible and inconsistent. If Liu Xinghai is accused of defrauding [the Long Ying Company's] 20 million yuan, then how would the 29% shares of the Nanchang World Trade Company held by the Long Ying Company be explained? Did the Long Ying Company also participate in contract fraud? Did the Long Ying Company defraud the Nanchang World Trade Company of 29% of its shares? Just think: paradox?

c. The investment fund of 20 million yuan and the 75 million financial management trust fund are both aimed for the Nanchang World Trade Center project, and so the 20 million yuan investment fund must be linked together with the 75 million yuan financial management trust fund, otherwise they would be self-contradictory. The 20 million yuan investment fund and the 75 million yuan financial management trust fund are the same and were both operated by Fang Jianyi, Financial Director of Shougang Holdings Group. All that was changed the operator and the subject. The Jiangxi High People's Court had already ruled that the " financial management trust " was legal, and so how could be "investment" be fraudulent?

2. Before the 20 million yuan investment by the Long Ying Company, the company sent personnel on many occasions to conduct field visits. During that period, the Director of the Honggutan Management Committee also stated that the 20 million yuan was needed to restart the project. Later, the Long Ying Company Board decided to invest in the project. I would like to ask: Did the Honggutan Management Committee also participated in committing fraud?

a. No evidence could be found of fabricating the facts and concealing the truth, and so what reasons could be used to support the prosecution's accusations? Regarding "contract fraud" in this case, there is no evidence that Liu Xinghai fabricated the fact and there is no evidence that he concealed the truth. The decision to invest 20 million yuan was made solely by the Board of Directors of the Long Ying Company after they conducted field visits. This follows the laws of the market, and there exists no fraud.

b. If Liu Xinghai fabricated the facts, then Fang Jianyi and Lei Yuanjiang are accomplices. Fang Jianyi, the legal representative of the Long Ying Company, and Lei Yuanjiang, Director of the Honggutan Management Committee, both considered, from different angles, the Nanchang World Trade Center to be a good project. The indictment goes as far as accusing Liu Xing of "fabricating that only 20 million yuan was

*11*

needed to complete the Nanchang World Trade Center project." If it is true that Liu Xinghai "fabricated the facts", then wouldn't Fang Jianyi and Lei Yuanjing be guilty as accomplices? If Fang Jianyi and Lei Yuanjing are not determined to be accomplices in "fabricating the facts," then on what basis is [the prosecution] holding Liu Xinghai responsible?

   c. <u>After the two sides agreed on exchanging investment funds and shares, they agreed on returning the investment funds and its profits, so how can "illegally obtaining" line up?</u> According to the agreement between Liu Xinghai and Fang Jianyi, in order to guarantee that the Long Ying Company can receive the return of its 20 million yuan investment and profits, the Long Ying Company can, within 6 to 12 months, transfer stock profits it held to Liu Xinghai. I would like to ask: Liu Xinghai is facing a financial expert, there will naturally be acceptances and returns, so how could such a swindler exist?

      The important point that must be mentioned is, the prosecutor had already read to the court the testimonies of the witnesses and the related evidence above which states Liu Xinghai did not commit any crimes, so how can they still come to the conclusion that Liu Xinghai is guilty of committing fraud?

3. After Liu Xinghai received the investment funds, in order to restart the project, he paid the Hang Jiang Group the construction fees and gave them the collateral land permit as per their agreement. The reason construction was not started was because of the Hang Jian Group, the fault does not lie with Liu Xinghai.

   a. <u>The purpose of receiving the investment fund was to restart construction. The construction company breached the contract, causing construction to halt.</u> After receiving the 20 million yuan investment fund, Liu Xinghai transferred 6 million yuan to Hang Jian Group as per his agreement with Hang Jian Group's chairman Wang Minghe, and used the land permit as collateral so they could resume construction. Due to internal reasons, Hang Jian only allocated 2 million yuan to their construction department, causing construction to remain halted.

   b. The "Indictment" contains a legal logic error. The prosecution accused Liu Xinghai of "so far failing to return the investment fund back to the Long Ying Company" and used this to determine that he had the intention to defraud the Long Ying Company. This determination contains the following errors: 1.) investment funds cannot be divested, asking for the return of the investment fund is itself in violation of "Corporate Law"; 2.) on December 31, 2004, according to the appraisal of  independent third party, the value of the project was as high as 349 million yuan, there was no need to defraud. But still, [the prosecution] determined that Liu Xinghai intended to defraud the 20 million yuan; 3.) At the start of the Nanchang World Trade Center project, the Nanchang Agricultural Bank had already extended 280 million yuan

line of credit, the Nanchang World Trade Company already had sufficient sources of funding. Yet the prosecution still determined that Liu Xinghai intended to defraud due to lack of funds.

## B. Regarding the Crime of Illegally Transferring Land Usage Rights

1. Liu Xinghai transferring his personal shares in the apartment company was legal, the law does not prevent the transferring of shares. Moreover, the property right holder did not change.

    a. The land usage right was still retained by the apartment company; no change was involved. There does not exist the issue of "illegally reselling." The Xiamen Lianfa Company, under the "Corporate Law" and other relevant regulations, legally became a shareholder of the apartment company after purchasing Liu Xinghai's shares in the apartment company and gained control over the apartment company's operations and finances. The actual controller in changing the property through share transfers, from the legal standpoint of only changing shares, only needs to satisfy the law and legal requirements regarding share transfers, it does not concern changes to the apartment company's land usage rights. Thus, it is not limited by Article 38 of the "Urban Real Estate Management Law." The land usage right was still retained by the apartment company, the ownership did not change, so there does not exist the issue of "illegally reselling."

    b. The model of using shares to obtain land usage rights has become of the most popular methods of obtaining land usage rights in our nation. After SASAC ordered that 78 state-owned enterprises would withdraw from the real estate market in March, 2010, including China Huaxing Group, China Resources Holding Co. Limited, China National Building Material Company Limited, State Power Investment Corporation, and other state-owned enterprises, transfer of shares was used to transfer land which were held by those company. The world-renowned "King Land of Beijing" – the Dongshengxiang plot in Haidian District, was purchased for a very high price by the Beijing Shibo Hongye Real Estate Development Company Limited, a subsidiary of China South Industries Group Corporation. Due to funding issues, construction did not start for over a year. In August, 2011, the Baoli Real Estate (Group) Company Limited issued a statement stating that it had "obtained the project by purchasing 100% of the shares held by the Beijing Shibo Hongye Real Estate Development Company Limited."

    c. The government approves of this method. SASAC ordered that state-owned enterprises nationwide transfer their real estate projects and widely used the method of transferring shares to transfer the usage rights to the land. From this we can see that using transferring of shares to transfer real estate projects is legal and is supported and encouraged by the major state departments. If Liu Xinghai's transferring of the apartment company's shares constitutes a crime, then should the heads of the major

state-owned enterprises who engaged in this exact same behavior also be guilty of the same crime? Should the leadership of SASAC, the Securities and Futures Commission, and the State Land Bureau be held responsible for dereliction of duty?

2. Liu Xinghai transferred 80% of his exclusive shares in the apartment company and obtained only a meager 4.8 million yuan, Liu Xinghai did not have the intention to profit.

   Liu Xinghai's transferring of 80% of the apartment company's shares does not include a premium and there exists no profit. This judgement maintains that Liu Xinghai's transferring of the shares was for a contribution of only 4.8 million yuan, and did not profit from it.

3. The two parties which signed the "Construction Compensation Contract" were the Nanchang World Trade Company and the Apartment Company, this is the corporate behavior and Liu Xinghai did not have the intention to profit.
   a. Paying the construction compensation fee is a market behavior between two companies, and any resulting legal consequences should be bore by the companies. Investigating Liu Xinghai as the responsible person is a major legal error.
   b. The construction compensation fee is real and unquestionable. The parcel numbers for the Nanchang World Trade Center project was B9, B10, and B11. It was a long-term and large sum investment with a slow return period. The government was well aware of this fact and so decided to allocate B5 and B6 land parcels for real estate development as compensation for the Nanchang World Trade Company's investment. However, when the Nanchang World Trade Company transferred this piece of "fat meat" to the Xiamen Lianfa Company, continuing to invest into the public part of the project as chewing the "bone" by itself, the two sides "paired up fat with thin", this is to meet market rule, mutual equivalent compensation, fair and reasonable, the law of free market.

4. After the Nanchang World Trade Company obtained the construction compensation fee, it did not leave with the money, but rather continued the construction project. This is sufficient to say that the Nanchang World Trade Company did not have the intention to profit.

   On March 17, 2004, the Nanchang World Trade Companyreceived 139 million yuan in construction compensation fees. If its goal was to profit from transferring the land usage right, then why did [Liu Xinghai] not run away with the money? [He] still endured the hardships and continued to chew the "bone" up until November 21, 2004 when he signed the B9, B10, B11 land parcel transfer contract with the government.

C. *Regarding the Crime of Concealing Accounting Receipts, Accounting Registers, and Financial Accounting Reports*

14

1. The Nanchang World Trade Company only has one set of accounts. They are all accurate records and Liu Xinghai had no reason to conceal these financial documents.

   Long Ying Company's Fang Jianyi had already led a team of accountants to inspect the accounts of the Nanchang World Trade Company, and countless civil lawsuits afterwards also inspected the accounts. Liu Xinghai had no motive to conceal these financial documents.

2. Liu Xinghai's entrusting of Liu Yi to safe keep the company's financial documents is performing his legal duties.

   According to Article 13 of the "Administrative Measures for Accounting Records", a company that has been revoked, dissolved, declared bankruptcy, or has ceased operations due to other reasons must, before terminating the company and conducting the cancellation of registration procedures, have its account files stored by the terminating company's operations department, the owner of the assets, or a by a relevant archive. Those under different legal requirements or regulations will follow those requirements and regulations. Liu Xinghai's entrusting of Liu Yi to safe keep the company's financial documents is performing his duty as the designated legal representative of the company. Just think: if Liu Xinghai did not entrust anyone to safe keep these financial documents, but rather would have them scattered and lost, would it not be more convenient to simply burn them?

3. The documents Liu Xinghai handed over was all the documents of Da Fang Group's subsidiaries, he did not specifically conceal the financial documents of the Nanchang World Trade Company.

   The company files kept by Liu Yi had 83 boxes and weighted 3,000 kilograms. The Nanchang World Trade Company files seized by public security agencies was only 30 boxes, roughly one-third of the total. In addition, these files contained the business files, economic contracts, construction blueprints, and personal files of the Nanchang World Trade Company and other related companies. In comparison, the importance of the Nanchang World Trade Company's files is less than that of the other companies.

4. Liu Xinghai had revealed all the information he had relating to the location of those files to the prosecution, he did not engage in concealment.

   Liu Xinghai was detained on June 13, 2010, but these files were only transported to Beijing on June 14, 2010 and it was only on July 22 that Liu Yi took them from the freight station and stored them. Liu Xinghai could not possibly have known where these files were being stored. Telling the investigators that he did not know where the files were in line with reason. The fact that Liu Xinghai did not know does not mean he concealed them.

Moreover, during the investigation period, Liu Xinghai had already told investigators that Liu Yi and others knew the location of the files, and investigators did locate the files after questioning Liu Yi.

## D. Regarding the Crime of Falsifying Registered Capital

1. The injection of the 30 million yuan from Huaqi Corporation is real
   a. There is the "Capital Verification Report" produced by the accounting firm.
   b. There is the "Bank Letter of Inquiry" produced by the bank to the accounting firm.
   c. There is the "Bank Deposit Receipt" produced by the bank to the Nanchang World Trade Company.
2. According to the agreement between Huaqi Corporation and the Nanchang World Trade Company, the direction of this investment is not limited and the Nanchang World Trade Company has sole discretion in operating this investment fund.
3. The Administration of Industry and Commerce in registering the capital increases, proceeded with a formal review, namely: it used the "Capital Verification Report" to register the increases. The prosecution's determination that "transferring the investment without the Administration of Industry and Commerce registering the increases is falsifying registered capital" is without any legal basis.

In conclusion, the first and second trial courts did not respect the law and did not respect the facts. Its verdict contains factual errors, legal errors, and procedural errors, which severely jeopardizes the dignity of the law and disregards the basic rights of the victim. The victim's appeal matches the situation of "the original verdict misdetermined the facts; misapplied the law" as stipulated under the "Criminal Procedure Law of the People's Republic of China" Article 204, Section 1 and Section 3. This case should be retried and the errors of the original verdict should be corrected under trial supervision procedures so as to maintain the dignity of the law, law abiding nature of the victim and his right to litigation. Now, in accordance with Article 203 and Article 205, Section 3 of the "Criminal Procedure Law of the People's Republic of China", [the appellant] is submitting this appeal to the People's Republic of China Supreme People's Court and hopes that the Court will support his appeal request.

Sincerely,

Appellant: Liu Xinghai (Signature)

October 1, 2015

Agent 1:

16

Lawyer: Chen Youxi (Zhejiang Jingheng Law Firm)

Tel: 86-13905818780; 86-(571)-28866398

Address: 9F District C, Huanglong Shiji Plaza, Hangda Road, Hangzhou, Zhejiang Province

Zip Code: 310007

Website:

http://www.celg.cn/news/detail_980.html
http://www.chenyouxi.com/cnweb/html/redianguanzhu/201212261974.html

Agent 2:

Lawyer: Gu Xianping (Beijing Xianping Law Firm)

Tel: 86-13901393157

Address: 805, No. 2 Wenbo Building, Wanshou West Road, Haidian District, Beijing
Zip Code: 100036

Exhibit I1

**The English Translation from One of Chinese Articles published by the First Financial News (one of Chinese Newspaper) on 8/7/2009.**

Translation:

On 7/30, Nanchang is humid.

Standing in the middle of the construction site of the "Nanchang World Trade Center" in the center of Nanchang Honggutan District's CBD, CBN reporter find many court-affixed seals plastered on the locked main gate. The command center constructed seven years ago is now deserted, and all that remains is a single work left behind to guard the site, hiding underneath the shade with a few dogs.

Only from the left-over models and the publicity posters plastered on the walls can one imagine that the dilapidated site was once heralded as "Nanchang's First Building."

"The Hangzhou Construction Group was in charge of construction at first, but later, work was on and off, and the building was never completed," the remaining worker told us.

The history of this building is full of frustration and sorrow.

In October of 2002, Zhejiang Fangda Group came to an agreement with the Nanchang Municipal Government and gained land parcel B9, B10, and B11 in the center of Nanchang's Honggutan. Fangda Group announced that it would invest 200 million yuan to construct a 157-meter-tall building, which was claimed to be the highest graded, tallest, and largest building in Jiangxi province, and that commencement ceremony would be held at the end of the year. Because of the large sum of investment, this project became classified by the Nanchang government as "Project Number One."

In the early beginning of 2004, the "Project Number One" remained stagnant with only two floors built. It was reported that, under financial pressure, the developer attempted to adopt the sales strategy by using "internally sell" method to start to sell the project even the procedures were not yet complete, but the results were unsatisfactory.

Coinciding with the land transfer method changing in 2004, the land parcels were reclaimed by the local government. In accordance with the open transfer of bidding and auction policy, the land was sold to the Nanchang World Trade Center Company, Limited (hereafter referred to as the "Nanchang World Trade Company") at the price of 580,000 yuan per mu ( a Chinese land measure unit, roughly equals 1/6 acre ).

The Nanchang World Trade Company was a subsidiary of the original investor, Zhejiang Fangda Group. It should be pointed out that this price was still very cheap – at the time, another block of land in the Honggutan District was auctioned off for 2 million yuan per mu.

But there was still no progress on the construction of the "Nanjing World Trade Center." The developer originally wanted to use the common commercial real estate practice by using the land as collateral for bank loan, but because only "the International Exposition Center" part of the two World Trade Center buildings had received land use permits, the amount of the bank loan received was less than expected.

In the end, "Nanchang's First Building" became "Nanchang's First Unfinished Building." CBN reporters found that on the east side of the "Nanchang World Trade Center" is the Nanchang CPC's office building and the Nanchang Municipal Government office building, while to the west is the Nanchang Bureau of Land and Resources. For the past few years, around this unfinished building, the local government, the developer and the construction company constantly bargain the deal around Nanchang, Beijing, and Hangzhou.

On November 19, 2006, the Nanchang Bureau of Land and Resources announced in the newspaper that it was cancelling the land registration certificate of the "Nanchang World Trade Center" project. Prior to that, the Nanchang Honggutan New District Land Reserve Sub-Bureau and the Nanchang World Trade Company signed the "Agreement on the reclaim and Compensation of State-Owned Land Usage Rights" agreeing that the land mentioned above and all above-ground structures would be "repurchased" by the government for 180 million yuan.

In March of 2008, the Shanghai Green Land Group purchased the land originally owned by the Nanchang World Trade Company for the price of 3.45 million yuan permu. Included in the Green Land Group's total payment of 675 million yuan, aside from an estimated 598 million yuan for the 173 mu of land, there was also an estimated 78 million yuan for the buildings that were already under construction on the site.

After 16 months, the original "Nanchang World Trade Center" land was once again re-listed for sale and was considered an important step in accelerating the development of the Honggutan New District. Having learned their lesson, this time the Nanchang Municipal Government put forward clear requirements on the completion time.

The Green Land Group was required to begin construction within 6 months after signing the "Transaction Confirmation." If construction was still not started after 9 months, the transferor had the right to revoke the land without any compensation. The project was to be completed four years after construction began and if it was delayed, then the land could still be revoked without compensation.

And so after a few twists and turns, the "Nanchang World Trade Center" became the "Green Land Central Plaza."

But the story does not end here. In March of 2009, under the request of the construction company – the Hangzhou Construction Group Limited Company (hereafter

2

referred to as "Hangzhou Construction"), the Hangzhou Intermediate People's Court seized the land usage rights and all above-ground structures under the document number "Hong Tu Guo Yong's "(Deng Hong 2005) No. 813 and 814 land plots. It also froze Shanghai Green Land Group's compensation fee of 90 million yuan (including the execution fee) of their purchase of those land plots and above-ground structures.

Hangzhou Construction believed that the 180 million yuan compensation fee was not used to pay the debt incurred from construction on the above-mentioned land and structures as per the agreement. Thus, they appealed to the Zhejiang Higher People's Court for the construction cost and penalty fee amounting to an estimated 87,920,000 yuan.

Caught up in the dispute was a steel supplier who told reporters that between the Nanchang Honggutan New District and the legal representative of the Nanchang World Company Liu Xinghai was another dispute over a 147 million yuan debt. In the end, the Honggutan New District took this money directly out of the 180 million yuan compensation.

The dispute became more and more complicated. The Nanchang World Trade Company also refused to apply for the change in the land usage registration and refused to hand over the land and above-ground structures. Hangzhou Construction thus believed that the Public Notice on the Cancellation of Land Usage Right unilaterally published by the Nanchang Bureau of Land and Resources had no legal effect.

The case went back and forth between the Jiangxi Higher People's Court, the Nanchang Intermediate People's Court, the Zhejiang Higher People's Court, and the Hangzhou Intermediate People's Court. The two secondary courts tried to mediate on many occasions but with no succession, and this put the Green Land Group, who had already paid 300 million yuan for the land in a very tough situation.

This year on June 30, the Green Land Group invited the Jiangxi Party Secretary Su Rong to attend the commencement ceremony of the "Nanchang Green Land Central Plaza." According to Hangzhou Construction, after announcing construction, Su Rong discovered that the land of the original "Nanchang World Trade Center" was still under seizure by the courts, and ordered the Nanchang Municipal Government to resolve the situation.

The Deputy Director of the Nanchang Bureau Land and Resources Ai Lianghui declined an interview at the commencement ceremony. A supervisor of the Green Land Group told reporters that this situation was an issue of the past, and he believed that the Nanchang Municipal Government will take care of it.

**Exhibit III**

**Transcription of Recording**

"Mrs. Zhao, hello, this is David. I don't know if you've recently seen the Guo Wen Gui video as it's now reporting on youtube and twitter the situation in China and has greatly raised awareness in many overseas Chinese citizens. Recently it's been focused on mainly covering Meng Jian Zhu, the Secretary of the Chinese Politics and Law Committee, and Zhang Yu Liang. They mentioned Greenland Corporations in Shanghai, Zhang Yu Liang, the chairman/president of the company, who is in fact his "xiao ma zai" (puppet). Greenland claims to be a government-owned corporation, but is actually a private-owned corporation. Meng Jian Zhu's family has a great deal of power in Greenland, and they mentioned Greenland's development in Hong Gu Tan, which Xing Hai was working on, because Meng Jian Zhu happened to be JiangXi province's Secretary of the Provincial Party Committee. So, what I mean to tell you is that Xing Hai's EDNY case against Greenland in Shanghai, I personally think will not succeed, especially since the court has only given you a notice confirming the receipt of a complaint and to proceed with the service of summons - the defendant, that is, Greenland Shanghai's subsidiary company in New York, doesn't know that the suit has been filed yet, but they can hire a lawyer and refute your claims one by one, so this case has no way of being processed in New York. Without proper evidence, there will be no way to proceed. In addition, if news of this reaches Beijing that Xing Hai is suing while in prison and causing them inconvenience, this will negatively affect his appellate case in Beijing in the future as they will probably think something along the lines of 'If you are already causing us trouble while in prison, what will you do if we let you out?" Overall, it will likely have a large impact on his case. So, if you have time, tell Xing Hai that his case is still mainly focused in Beijing right now; after his appellate case is finished, whether something happens between Greenland and Xing Hai or not, or the relationship between him and the Nan

*l*

Chang government, these financial disputes can all wait to be solved after he comes out of jail. So, remind him to stop kicking the hornet's nest; people will see that in this situation it is he in Beijing's trial vs Greenland and Meng Jian Zhu, who is now Secretary of the Chinese Politics and Law Committee. After the 15th Central Committee of the Communist Party of China they might leave the stage, or could be "shuanggui" (disciplined), but so far these two are still main players and very powerful. That said, next time you and Xing Hai have a phone call, please relay to him my message: whatever he does in New York will be useless and will not help."